

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

April 29, 2021

**Via ECF**
The Honorable Judge Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Pinguil v. Sky Land Tempering Glass Corp., et al.**
    **20-CV-4302 (SJB)**

Dear Judge Bulsara:

Our office represents Miguel Pinguil ("Plaintiff") and we submit this motion jointly with counsel for Sky Land Tempering Glass Corp. and Ricky Zheng (collectively, "the Defendants"), requesting the Court's approval of the parties' settlement agreement. The Settlement Agreement, attached hereto as **Exhibit 1**, was achieved following approximately five hours of negotiation at a Court-annexed mediation held on April 1, 2021.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

**I.     The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

   a.   **The Settlement Amount**

The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, for $37,500.00 in one installment following Court approval of the Settlement Agreement.

   b.   **Plaintiff's Position**

Plaintiff was formerly employed by Defendants as a glass cutter and glass installer and brought this action alleging violations of the Fair Labor Standards Act ("FLSA") and New York

Labor Laws ("NYLL"). Plaintiff was employed by Defendants from in or around January 2017 until in or around June 2020. In general, Plaintiff alleged that he regularly worked 58 hours per week during his employment, but that he was not compensated for approximately 18 hours of overtime work performed each week.

Lastly, Plaintiff alleged that he was entitled to recovery under NYLL §195 for Defendants' failure to provide proper wage notices and wage statements.

Defendants provided time cards and copies of checks in advance of the parties' mediation, which Plaintiff had an opportunity to review. Although Plaintiff disputed the accuracy of these records, particularly as to the number of hours worked each week, Plaintiff acknowledged that the records showed, on average, that Defendants paid Plaintiff approximately 8-10 hours of overtime per week. However, Plaintiff still maintained that he worked hours beyond what the records reflected for which he was not compensated. Accounting for the partial overtime payments made, Plaintiff estimated that he was still owed approximately $30,000.00 in unpaid overtime wages.

Although Plaintiff was confident that he could succeed on all his claims at time of trial, Plaintiff recognized the risks of continuing litigation. Plaintiff recognized the factual disputes as to the dates of his employment, his alleged number of hours worked each week, his alleged rates of pay and the affirmative defenses raised by Defendants. Plaintiff also considered the probative value of the records provided by Defendants despite maintaining disagreements as to their accuracy. That these disputes would not likely be resolved until the time of trial, at an uncertain date in the distant future, favored agreeing to resolve their claims at mediation and receiving a lump sum payment shortly after Court approval of the Settlement Agreement.

   c. **Defendants' Position**

Defendants' position is that, according to the time records, punch cards and the ADP pay stubs, from January 2017 to on or around June 9, 2019, Plaintiff worked five (5) and a half days per week. From Monday to Friday, Plaintiff started working at around 8:00 am to approximately 6:00 pm. Plaintiff would take a lunch break for about an hour between approximately 1:00 pm to 2:00 pm. On Saturday, Plaintiff would work for five (5) hours from approximately 8:00 am to 1:00 pm. Therefore, Plaintiff worked approximately fifty (50) hours each week. From January 2017 to On or around December 31, 2018, Plaintiff was paid at a fixed rate of $11 per hour for hours the first forty (40) hours, and then $16.5 per hour for hours exceeding forty (40) per week. For the Saturday half-a-day work, Plaintiff would receive cash in addition to the direct deposit paid thru ADP, although Plaintiff's work hours on Saturdays were already paid and calculated on ADP paystubs. Starting on December 31, 2016, the minimum wage in Long Island City, New York State was $11.00 per hour. Starting on December 31, 2017, the minimum wage in Long Island City, New York State was $13.00 per hour. Therefore, Defendant had paid Plaintiff properly according to the FLSA and the NYLL.

From on or around December 10, 2018 to on or around March 25, 2019, Plaintiff wanted to apply for social benefits, and therefore, requested Defendants to issue him less salaries via ADP in check. However, the remaining amount was paid in cash to Plaintiff.

From on or around December 10, 2018 to on or around June 9, 2019, Plaintiff worked on the same hours and was paid $15 per hour for the first forty (40) hours he work, and then $22.50 per hour for hours exceeding forty (40) hours per week. Starting from December 31, 2018, the

minimum wage in Long Island City, New York State was $12.00 per hour. Therefore, Plaintiff was paid well above the minimum wage requirement under the NYLL, and properly compensated for his overtime work.

From May 13, 2019 to June 9, 2019, Defendants further raised his salary from $15.00 per hour to $15.50 per hour. From on or around June 10, 2019 to June 15, 2020, Plaintiff worked the same hours from Monday to Friday, and on Saturday, Plaintiff would work from 8:00 am to 3:00 pm, and therefore, worked fifty-two (52) hours per week. Plaintiff continues to receive cash in addition to the direct deposit issued by ADP. On the ADP records, Plaintiff was compensated $15.50 per hour for the first forty (40) hours per week and then $23.25 per hour for hours exceeding forty (40) hours. Starting from December 31, 2019, the minimum wage in Long Island City, New York State was $13.00 per hour. Therefore, Plaintiff was properly compensated with an hourly rate above the minimum wage requirement and overtime requirement under the FLSA and the NYLL.

Defendants provided Plaintiff with the paystubs generated by the ADP company. However, Plaintiff refused to take them.

Last but not least, the salaries claimed in the Complaint is Plaintiff's after-tax income and cannot be treated as pre-tax gross income according to the ADP paystubs. There is no doubt regarding the truthfulness or accuracy of those paystubs because Plaintiff's complete payment records were kept by third party company.

As mentioned above, during Plaintiff's employment with Defendants, Defendants has properly compensated Plaintiff with an hourly rate at or above the minimum wage and overtime wage requirements under the FLSA and NYLL, and has provided Plaintiff with Wage Notice, as well as wage statements. Moreover, Plaintiff was compensated with cash additionally, which Plaintiff untruthfully denied. Therefore, Plaintiff was paid more than he should have been paid under the FLSA and the NYLL, and Defendants firmly deny all claims under the FLSA and the NYLL. However, Defendants want to settle this case considering the risks of the collective action and all the legal costs and attorney fees possibly occur.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted).

The parties have agreed to settle all claims asserted in this matter for $37,500.00. The parties believe that this amount is reasonable when considering Plaintiff's claims and potential damages, the defenses and records maintained by Defendants in this matter and the fact that the terms of the Settlement Agreement were achieved through the assistance of an experienced wage-and-hour neutral selected from the Court's mediation panel. Moreover, the agreed-upon settlement

amount will allow Plaintiff to recover nearly all of his alleged unpaid overtime wages (a figure which was strongly contested by Defendants), when accounting for the overtime hours paid to Plaintiff. As such, the settlement amount falls squarely within the possible range of recovery by Plaintiffs, accounting for the risks of continued litigation.

The parties had genuine, bona fide disputes over the number of hours worked by Plaintiff, the wages paid to Plaintiff and the dates of Plaintiff's employment, but both sides made compromises on their positions in an effort to achieve a fair and reasonable settlement.

## II.   The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 2 of the Settlement Agreement ("Release") is narrowly-tailored to claims under the FLSA and NYLL and its associated regulations concerning unpaid wages, record-keeping violations and failure to provide proper wage statements. The Release does not raise any concerns regarding unequal bargaining power between Plaintiff and Defendants and the Release is not overbroad such that there is a concern that Plaintiff is releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiff from openly discussing his experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

## III.   Distribution to the Plaintiffs and Requested Attorneys' Fees and Expenses

### a.  Distribution to the Plaintiff

The parties agreed to a global settlement of $37,500.00 to resolve all claims asserted in this action. If the Settlement Agreement is approved by the Court, Plaintiffs will recover $24,365.00 after attorneys' fees and expenses.

### b.  Requested Attorneys' Fees and Expenses

Plaintiffs' counsel respectfully requests reimbursement in the amount of $953.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $400.00

- the costs of service of the Summons and Complaint on all Defendants in this matter: $128.00
- the cost of the Court-annexed mediation held on April 1, 2021: $425.00

Plaintiff's counsel respectfully requests one-third of the settlement less their identifiable expenses ($36,547.00), or $12,182.00 in attorneys' fees, as agreed upon in the Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $13,135.00.

**Settlement Amount:** $37,500.00
**Attorneys' Expenses:** $953.00
**Settlement less Expenses:** $36,547.00 ($37,500.00 - $953.00)
**Requested Attorneys' Fees:** $12,182.00 ($36,547.00 / 3)
**Total payable to Attorneys:** $13,135.00 ($12,182.00 + $953.00)
**Total payable to Plaintiff:** $24,365.00 ($37,500.00 - $13,135.00)

Plaintiff's counsel and their client have a retainer agreement that is reduced to writing and signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their clients throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

**IV.     Closing**

In closing, the parties believe that the settlement amount and the terms of the Settlement Agreement are fair and reasonable. The settlement was the product of careful negotiation between experienced counsel with the assistance of an experienced and qualified neutral at a Court-annexed mediation and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement.

We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.